UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
IN RE APPLICATION OF WINNET R CJSC,   :          16mc484(DLC)
FOR AN ORDER PURSUANT TO 28 U.S.C.    :
§ 1782 TO CONDUCT DISCOVERY FOR USE IN :         OPINION AND ORDER
A FOREIGN PROCEEDING                  :
                                      :
------------------------------------- X

APPEARANCES:

For WinNet R CJSC:
David J. Eiseman
Matthew C. Daly
Golenbock Eiseman Assor Bell & Peskoe LLP
711 Third Avenue, 17th Floor
New York, NY 10017

For Siguler Guff & Co., L.P. et al.:
Thomas E.L. Dewey
Keara A. Bergin
Dewey, Pegno & Kramarsky, LLP
777 Third Avenue
New York, NY 10017

DENISE COTE, District Judge:

     This dispute arises from a December 21, 2016 ex parte

application by WinNet R CJSC ("WinNet") pursuant to 28 U.S.C.

§ 1782 to take discovery for use in civil and criminal

proceedings in Russia.  The Russian proceedings arise out of

WinNet's leases of real estate to Femida Ltd. ("Femida") and the

transfer of those leases to Femida Nedvizhimost Ltd. ("Femida

Real Estate").  Through this § 1782 application, WinNet seeks

discovery from Siguler Guff & Co., L.P. ("SG"), a New York

private equity investment firm, and six individuals associated

with SG or SG-affiliated entities.  WinNet asserts that Femida

is managed by SG.  SG moved on January 30, 2017 to quash the

§ 1782 subpoenas.  For the reasons that follow, SG's motion to

quash is granted.

## Background

WinNet, a Russian company, owns two office buildings in

Moscow, Russia.[1]  In August 2010, WinNet leased the buildings to

Femida at a yearly rent of approximately $5 million per year,

with an annual increase of approximately 3%, for a non-

cancellable term of 25 years.  WinNet alleges that the leases

provided that the buildings could only be used as data centers,

and that Femida assumed the costs of renovation of the buildings

as data centers and of maintenance and repair.  Femida allegedly

began that work by demolishing the interior of the buildings,

but then ceased all work.

Femida struggled to pay the rent due under the leases.  The

Russian court in the "Reorganization Case," discussed further

below, noted that 2013-2014 audits found that the net asset

---

[1] WinNet relies primarily on an affidavit and exhibits from Anton
Aleksandrov ("Aleksandrov"), a partner in the Russian law firm
that represents WinNet in the Russian civil cases.  SG relies
primarily on an affidavit and exhibits submitted by Russian
barrister Dmitry A. Khan, who represented Femida and Femida Real
Estate in the Russian civil cases.

value of Femida "was less than the minimum amount of authorized capital established by law," that "Femida was incurring significant losses," and that "there is a significant doubt as to the ability of the Company to carry on its activity continuously, as well as to sell its assets and fulfill its obligations without financial support."

WinNet alleges that Femida and the group of entities with which it is affiliated decided to "'cut its losses' by dumping the WinNet leases." According to WinNet, in June 2015, Femida's parent company transferred Femida's obligations under the leases to Femida Real Estate, while Femida retained its only income-producing asset, a third building containing a functioning data center. WinNet further alleges that Femida and its sublessee[2] conspired to terminate the subleases, leaving Femida Real Estate without a rent-paying tenant for the WinNet buildings. WinNet alleges that these actions were an improper reorganization scheme designed to render Femida and Femida Real Estate judgment-proof and deprive WinNet of the payments due under the leases. WinNet alleges that Femida Real Estate made only one lease payment, on December 20, 2015, and it has not paid rent since that time, breaching the terms of the leases.

---

[2] Femida subleased the buildings to DataSpace Partners, the operating company for the data center.

Beginning on December 23, 2015, WinNet initiated a series of civil actions in Russia against Femida and Femida Real Estate seeking rent and reconstruction payments. WinNet also filed a criminal complaint.

A. Civil Proceedings

Beginning on December 23, 2015, WinNet initiated ten civil actions in Russia against Femida, Femida Real Estate, and others. The first and most significant for purposes of this § 1782 motion was a lawsuit in which WinNet attacked the transfer of the lease obligations from Femida to Femida Real Estate as an unlawful reorganization. WinNet lost that litigation and there is no ongoing civil proceeding in Russia in which Winnet is pursuing that theory. Most of the remaining lawsuits are actions to collect rent payments from Femida and/or Femida Real Estate. Each case is described below.

Reorganization Case (A40-250765)

WinNet initiated the Reorganization Case against Femida and Femida Real Estate on December 23, 2015, alleging that the reorganization was improper and done in bad faith and requesting accelerated lease payments of $128 million for the full term of the leases. Femida employed Baker Tilly Rus Consulting ("Baker Tilly") as an expert to explain that the reorganization was undertaken lawfully, while WinNet presented evidence regarding

4

the reorganization from its expert, Interexpertiza, LLC.  In its
April 22, 2016 Opinion, after reviewing documents and expert
testimony submitted by both parties, the Russian court of first
instance wrote that "in the process of consideration of the
present case, the Defendants furnished sufficient amount of
other evidence, which refute the claim of the Plaintiff
regarding the bad-faith distribution of assets in the process of
reorganization of [Femida]."  The court thus found "no grounds
for satisfying" WinNet's claims against Femida and Femida Real
Estate.  The court found that WinNet's claim for accelerated
rent must fail for another reason.  WinNet was required to file
such a claim within thirty days of the last notice of
reorganization, and it did not do so for over four months after
that date.

Regarding WinNet's purported evidence that the
reorganization was undertaken in bad faith, that Femida retained
the building and functioning data center while Femida Real
Estate assumed the obligations under the leases, the Russian
court found that WinNet and its expert did not take into account
that the retained Femida building was "fully pledged as a
security" under that building's loan agreement.  It also noted
that various losses and liabilities were transferred to Femida
while certain profits were transferred to Femida Real Estate in

the reorganization.  The decision states that:

> during the sitting the court confirmed the statement
> of the Defendants that the reorganization of [Femida]
> was aimed at the optimization of its activity and
> related to the decision of the sole shareholder to
> segregate its activity associated with the use of its
> own asset (the building owned by [Femida]) and its
> activity associated with the use of buildings leased
> from the Plaintiff, which activity de facto consists
> of subleasing such buildings.

The trial court also stated that it "is of opinion that by
raising the claim seeking to collect rent for the entire period
of validity of the lease agreements concluded for the period 25
years the Plaintiff abuses its rights."  Because the amount
sought by WinNet greatly exceeded the value of the assets of the
defendants, the court "question[ed] whether in raising the claim
the Plaintiff pursued any other goals except to deliberately
bankrupt the Defendants and acquire the building" owned by
Femida that contained the functioning data center.

The court's decision was affirmed by the 9th Arbitration
Court of Appeals on July 1, 2016, and the Federal Arbitration
Court of Moscow Circuit on November 2, 2016.  On February 20,
2017, the Russian Supreme Court declined to hear WinNet's
appeal.

WinNet asserts that it will move for reconsideration of the
trial court's adverse ruling based on newly-discovered evidence
it purports to have received through the criminal investigation.

The new evidence on which WinNet relies is a presentation attached to a February 9, 2015 email from "Andrey," whose affiliation is unclear, to Ivan Sapronov ("Sapronov"), a Head of the M&A Department and Project Finance with Baker Tilly, in response to Sapronov's request to send the presentation. A copy of the presentation was obtained by WinNet in February 2017. The presentation describes an "Action Plan to Terminate the Lease Agreements between Femida LLC and WinNet R CJSC" through a reorganization by "spinning off a new legal entity." Sapronov asserts that he does not recognize the document, that the document is not contained in his email account and may not be authentic, and states that in any case, obtaining and publishing such a document would be a violation of attorney/client privilege.[3]

## 2nd Quarter 2016 Rent and Reconstruction Actions (A40-66237 & A40-66274)

WinNet initiated a case to collect rent in the amount of $700,000 and a case seeking specific performance of the duty to reconstruct or for the value of reconstruction, which it estimated at $38 million. The lawsuits were consolidated on

_____

[3] Aleksandrov avers "on information and belief" that Sapronov is not a lawyer, but Sapronov represents that he attended law school and is, in fact, a lawyer.

March 28, 2016.  In these actions, WinNet seeks to hold Femida
and Femida Real Estate jointly liable both for rent for the 2nd
quarter of 2016 and for the reconstruction payment.  In a
December 19, 2016 opinion, the Moscow City Commercial Court
denied the claims against Femida, because Femida was not jointly
liable with Femida Real Estate.  The court held that Femida had
already performed its "duty of proving the honesty of the
reorganization" in the Reorganization Case.  It partially
granted the claim against Femida Real Estate.

3rd and 4th Quarters 2016 Action (A40-163024) and Invalid
Transaction Suit (A40-192388)

    WinNet initiated the 3rd and 4th Quarters 2016 Action on
August 2, 2016, seeking to hold Femida and Femida Real Estate
jointly liable for $2.4 million in rent for those quarters based
on a theory that there had been an unfair distribution of assets
between the two entities.  WinNet initiated a separate lawsuit,
the Invalid Transaction Suit, against Femida and Femida Real
Estate on September 19, 2016, arguing that Femida Real Estate
had not been properly created and its registration should
therefore be annulled, thus "restoring the status quo that
existed prior to the legal violation."

    The court stayed the 3rd and 4th Quarters 2016 Action pending
the outcome of the Invalid Transaction Suit.  WinNet then moved

to withdraw the Invalid Transaction Suit, and that case was dismissed on December 5, 2016.

Other Civil Actions

WinNet has initiated several other lawsuits regarding the same underlying landlord-tenant dispute, which are summarized briefly here: (1) WinNet initiated case A40-107389 on May 11, 2016, to require Femida to replenish the security deposit. The case is currently on appeal under de novo review. (2) WinNet initiated case A40-162284 on August 1, 2016, asserting claims against Femida and Femida Real Estate for damage to the buildings as a result of lessors' termination of reconstruction. WinNet's claim was dismissed on February 9, 2017. (3) WinNet initiated case A40-159471 at some time in 2016 against Femida Real Estate, seeking rent under the land leases for the 3rd and 4th quarters of 2016. The court of first instance granted WinNet's claim on December 20, 2016. (4) WinNet initiated case A40-185513 on September 7, 2016, asserting claims against Femida and Femida Real Estate for $9,000 in unpaid utilities. (5) WinNet has filed one new lawsuit, A40-16287, for recovery of the rent payment from Femida Real Estate for the 1st quarter of 2017.

WinNet was also involved in case A40-168906, initiated on August 11, 2016, in which an entity called NextPay LLC ("NextPay") seeks to collect arrears for consulting services

rendered to Femida Real Estate.  WinNet intervened and argued

that the consulting fees are fabricated and intended to drain

Femida Real Estate of assets with which it could pay WinNet.

The court dismissed WinNet's claim on February 22, 2017.

B. Criminal Investigation

In response to WinNet's complaint,[4] on October 12, 2016, a

criminal investigation was opened in Moscow to investigate

"whether Femida's 'management'" was guilty of "Infliction of

Damage on Property by Deceit or Breach of Trust."  The damages

are identified as the non-payment of lease payments due to the

reorganization of Femida.  Russian authorities issued a document

on October 25, 2016 recognizing WinNet as a "victim of a crime"

and "as a civil claimant."  WinNet asserts that as a recognized

victim it has a broad range of rights under the Russian Criminal

Procedural Code, including the right to present evidence.

The Public Prosecution Office issued a document on March

16, 2017, finding "violations of the procedural law in the

course of initiating the criminal proceedings and investigation"

---

[4] The parties have not provided evidence regarding the initiation
of the criminal investigation, but from the discussions in their
briefs it appears undisputed that WinNet took steps to initiate
the criminal inquiry.

and an "absence of corpus delicti[5] in the actions of the

management of [] Femida."  It instructs the Investigative Unit

that opened the investigation to "eliminate the breaches,"

"considering that the incriminated actions contain civil law

relations, and judgments were made by an arbitration court."

An affidavit from Russian barrister Konstantin Semenko,

which is submitted by SG, explains that "[p]ractically speaking,

in my experience, this conclusion reflects that the Prosecutor

will not approve any indictment and the Prosecutor will not

approve or refer any charges or criminal case to court."  WinNet

has provided no evidence that the criminal investigation has

continued after March 16, has not addressed the March 16, 2017

document issued by the Public Prosecution Office, and has not

provided evidence contradicting Semenko's analysis.

The Ex Parte Application Before This Court

On December 21, 2016, WinNet filed an ex parte application

in this district before the Part I Judge, the Honorable

Katherine Polk Failla, for discovery in aid of foreign

proceedings pursuant to 28 U.S.C. § 1782.  The application

---

[5] Black's Law Dictionary defines corpus delicti as "[t]he fact of
a transgression; actus reus.  The phrase reflects the simple
principle that a crime must be proved to have occurred before
anyone can be convicted for having committed it."  Black's Law
Dictionary (10th ed. 2014).

sought to serve document and deposition subpoenas on SG and six individual witnesses.

WinNet explains that SG is related to Femida through the following web of relationships. WinNet alleges that the data center project in Russia is an SG investment which it "manages through a number of entities, including Femida." WinNet alleges that SG is the "manager" of Russia Partners II and III (together, "Russia Partners"), both Cayman Islands entities, and has offered a document describing Russia Partners as an "affiliate" of SG.

Russia Partners II and III collectively own 100% of a Cayman Islands holding company, DataSpace Holdings, Ltd., which in turn has five wholly-owned subsidiaries, including DataSpace Ltd. and Abourit Enterprises Ltd ("Abourit"). DataSpace Ltd. wholly owns DataSpace Partners, which was Femida's sublessee in the buildings and the operating company for the data centers. Abourit wholly owns Femida. Abourit also purportedly adopted a resolution for the creation of Femida Real Estate in June 2015 and transferred 49% of its interest in Femida Real Estate to Richtop Investment (Group) Limited ("Richtop"), a British Virgin Islands company. In March 2016, Femida renounced its remaining 51% ownership, leaving Richtop as the sole owner.

WinNet has withdrawn the subpoenas for two of the six

individuals.[6]  The remaining four individuals are Drew Guff

("Guff"), a founding partner of SG; Ross Goodhart ("Goodhart"),

a former principal of SG and COO of Russia Partners; Donald

Spencer ("Spencer"), SG's co-founder, managing director, and

senior counsel; and Ganesh Iyer ("Iyer"), a senior finance and

accounting manager at SG.  WinNet asserts that Guff and Goodhart

were "actively involved in all aspects of the management of the

[data center] project and exercised control over the project,

including the 'reorganization' scheme" and that Spencer had

"involvement in running the operations of the data center

project."  Spencer's signature appears on the resolution

providing for the creation of Femida Real Estate.  WinNet's only

allegation regarding Iyer is that he "took over Goodhart's

management responsibility for the data center project."

    WinNet principally seeks discovery regarding Femida's

reorganization.  Among other things, it seeks documents on the

reorganization of Femida and Femida Real Estate, the subleases

of the buildings from Femida to DataSpace Partners,

communications with the United States Overseas Private

---

[6] WinNet did not serve and withdrew its application for subpoenas
for Anna Aleinik, general counsel and chief compliance officer
of Russia Partners, and Vladimir Andrienko, a managing director
of Russia Partners and director of DataSpace Holdings Ltd.

Investment Corporation ("OPIC") in connection with the reorganization of Femida, the insolvency of Femida Real Estate, and its creditor NextPay.

The ex parte application to Judge Failla did not adequately disclose the extent to which WinNet's attacks on the Femida reorganization had been rejected by the Russian trial and appellate courts. First, WinNet did not adequately disclose that its attack on the reorganization of Femida had been repeatedly rejected by the Russian courts in the Reorganization Case. WinNet did not discuss the significance of the Russian courts' decisions in the Reorganization Case or attach the decisions to its application. It only described that litigation as part of a chart that had seven entries purporting to list the relevant actions it had commenced in Russia (the "Chart"). While the Reorganization Case was the first case WinNet filed, the Chart listed this first-filed case last in an otherwise chronological chart. Although identified in the Chart, the description of the Reorganization Case was incomplete if not misleading. The Chart described the "Subject-matter of Claim" as "the Defendants are jointly and severally liable for accelerated Building Lease payments for the full term of the Leases," without disclosing that in this lawsuit WinNet challenged the legitimacy of the reorganization. As a result,

while the "Status" column reflects that the Russian courts repeatedly ruled against WinNet, the Chart did not reveal that the three rulings issued between April and November 2016 reflected a complete rejection of WinNet's attack on the reorganization.

Second, WinNet did not adequately disclose the impact that its loss in the Reorganization Case had on the outcome of the 2nd Quarter 2016 Rent and Reconstruction Actions. It did list the 2nd Quarter Rent and Reconstruction Actions in the Chart and described the "Subject-matter of the Claim" as "the Defendants are jointly and severally liable" for the lease payments and duty to renovate the buildings, and under "Status" noted that the Moscow City Commercial Court "denied the claim against Femida in full." WinNet did not disclose, however, in the Chart or elsewhere that the Russian court's December 19, 2016 opinion denied the claim against Femida because it found that Femida had already performed its "duty of proving the honesty of the reorganization" in the Reorganization Case. As a result of that prior ruling, Femida could not be held jointly liable.

Third, WinNet did not adequately disclose that it had abandoned its challenge to the reorganization during its litigation of the Invalid Transaction Suit, resulting in dismissal of the case on December 5, 2016. Indeed, the Chart

15

did not contain a separate entry for the Invalid Transaction
Suit, nor is it listed by name or case number elsewhere in the
application.  At a March 15 conference, counsel for WinNet
represented that the withdrawal of the Invalid Transaction Suit
was referenced in the Chart in the entry for the 3rd and 4th
Quarters 2016 Action.  The "Status" column for that case reads:
"The proceedings at the Moscow City Commercial Court were stayed
pending resolution of a related case, but WinNet subsequently
withdrew its claim in the other case, so WinNet has filed a
motion to resume these pleadings."  (Emphasis added.)

Procedural History

Judge Failla issued an Order on December 21, 2016 granting
the application to take discovery from SG and the six
individuals in the forms requested.  Subpoenas were served in
January 2017,[7] and two motions to vacate the order or quash the
subpoenas were filed by SG and the six individuals on January
30, 2017.  The return date for the motion was ultimately set for
March 14, 2017.  WinNet filed its opposition to the motion on
February 28 and simultaneously withdrew its request to subpoena
Vladimir Andrienko and Anna Aleinik.

At the March 15 conference before this Court, then sitting

---

[7] WinNet did not serve Vladimir Andrienko or Anna Aleinik.

in Part I, the Court directed WinNet to present SG with its most narrowly tailored discovery requests. This miscellaneous case was assigned to this Court's docket on March 16. The motion to vacate and quash became fully submitted on March 22. WinNet wrote on March 24, 2017 that it had "narrowed the Subpoenas and made them more specific and presented the proposal to Movants' counsel."

## Discussion

28 U.S.C. § 1782 provides in relevant part that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). The statute has three requirements:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or any interested person.

Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 117 (2d Cir. 2015) (citation omitted).

Once the three statutory requirements are met, a district

17

court may use its discretion to order discovery under § 1782. Id. In exercising its discretion, the court must "tak[e] into consideration the 'twin aims' of the statute." Id. (citation omitted). These aims are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Id. (citation omitted). "[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015) (citation omitted). As in domestic litigation, however, "if a § 1782 application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto." Id. at 302 n.18 (citation omitted). See also Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1101 n.6 (2d Cir. 1995).

The Supreme Court outlined in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), a number of factors that a district court should consider in deciding how to exercise this discretion. These have become known as the "Intel factors," and are:

First, when the person from whom discovery is sought
is a participant in the foreign proceeding the need
for § 1782(a) aid generally is not as apparent as it
ordinarily is when evidence is sought from a
nonparticipant in the matter arising abroad.  A
foreign tribunal has jurisdiction over those appearing
before it, and can itself order them to produce
evidence.

Second, a court presented with a § 1782(a) request may
take into account the nature of the foreign tribunal,
the character of the proceedings underway abroad, and
the receptivity of the foreign government or the court
or agency abroad to U.S. federal-court judicial
assistance.

Third, a district court could consider whether the §
1782(a) request conceals an attempt to circumvent
foreign proof-gathering restrictions or other policies
of a foreign country or the United States.

Finally, unduly intrusive or burdensome requests may
be rejected or trimmed.

Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80-
81 (2d Cir. 2012) (citing Intel, 542 U.S. at 264-65).

### I.    The Statutory Requirements

It is undisputed that SG and the four remaining individual
witnesses can be found in the Southern District of New York and
that WinNet is an interested person in the Russian cases within
the meaning of § 1782 -- in other words, that the first and
third of the three statutory elements are satisfied.  SG
disputes, however, that the discovery sought here is actually
"for use" in a foreign "proceeding."

"By adopting the phrase 'for use,' Congress plainly meant

19

to require that § 1782 applicants show that the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." KPMG, 798 F.3d at 120 (citation omitted). "Under § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success." Mees, 793 F.3d at 299. "A § 1782 applicant satisfies the statute's 'for use' requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding." Id. at 295. "[A] request that fails to show that the materials sought will be of any use in the foreign proceeding would not satisfy the 'for use' requirement." Id. at 299 n.10 (emphasis added).

> [T]he 'for use' requirement is not limited to the actual receipt of materials into evidence in the foreign proceeding. Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered for use in a proceeding in a foreign or international tribunal.

Brandi-Dohrn, 673 F.3d at 77 (citation omitted). Further, "it is unwise -- as well as in tension with the aims of section 1782 -- for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law." Euromepa, 51 F.3d at 1099.

Not all foreign matters are "proceedings" within the

meaning of section 1782. While a party need not show that an adjudicative proceeding is "pending" or "imminent," the proceeding must be "within reasonable contemplation." KPMG, 798 F.3d at 123. To be within reasonable contemplation, "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." Id.

WinNet's ex parte application sought discovery for use in civil proceedings and an ongoing criminal investigation in Russia. WinNet identified a Russian police investigation in which WinNet had been recognized as a victim and claimant and its application included the Chart that listed various civil lawsuits in Russia. It asserted that the entities it called the "Siguler Guff Group" had engaged in a "reorganization scheme" to "dump" the WinNet leases by transferring the lease obligations from Femida to Femida Real Estate and by taking steps to make both Femida and Femida Real Estate judgment-proof.

WinNet has had difficulty showing that the discovery it seeks regarding the "reorganization scheme" will actually be for use in any Russian proceedings. Its request for § 1782 discovery is in connection with three categories of Russian proceedings: (1) the civil Reorganization Case, which is closed but for a possible motion for reconsideration; (2) the criminal

reorganization investigation, which is closed; and (3) a set of
civil cases, which largely seek quarterly payments as they
become due under the leases.  The first two categories have no
ongoing proceedings.  Evidence of the alleged reorganization
scheme has no apparent relevance to the third category of
proceedings.

Because they are closed, WinNet has difficulty showing that
either the criminal investigation or Reorganization Case is a
"proceeding" within the meaning of § 1782.  Any adjudicative
proceedings that might have resulted from the criminal
investigation are no longer "within reasonable contemplation."
Intel, 542 U.S. at 259.  Thus, in contrast to ongoing
proceedings, both the criminal investigation and the
Reorganization Case were filed, were active, have had their
merits addressed, and are now closed.  The only remaining avenue
to address the merits of the Reorganization Case is WinNet's
contemplated motion for reconsideration, which it has not filed.

As for the active civil cases, WinNet describes these
actions as "actions variously seek[ing] overdue rent payments
and remedies for failure to perform other lease obligations."
These actions are not proceedings for which the discovery
requested in the ex parte application, which principally sought
evidence to undermine the reorganization of Femida, would be

relevant.  WinNet has made no persuasive showing of the utility
of third party discovery from SG and its executives to interpret
the terms of the executed leases, to enforce WinNet's rights
under the leases to quarterly payments, or to prove a duty to
reconstruct the buildings under the leases.  Indeed, the Russian
courts have rejected WinNet's effort to challenge the validity
of the reorganization through these lease enforcement actions,
observing in the 2nd Quarter 2016 Rent and Reconstruction Actions
that Femida had already performed its "duty of proving the
honesty of the reorganization" in the Reorganization Case.

## II.  Intel's Discretionary Factors

Assuming, however, that WinNet can narrowly demonstrate
that the discovery sought is "for use" in Russian proceedings,
the Intel factors do not weigh significantly in its favor.  On
the one hand, WinNet has shown that the discovery it seeks from
SG and its executives is not available from either Femida or
Femida Real Estate, that the discovery it seeks might have been
useful to it in the now-terminated Reorganization Case, and that
the information is of the type that United States courts would
wish to encourage foreign courts to produce for comparable
American court proceedings.

But, a district court must consider as well whether the
request for materials constitutes an attempt to circumvent

"other policies of a foreign government." Brandi-Dohrn, 673
F.3d at 80 (citation omitted). SG has shown that WinNet's
request is properly viewed as an attempt to circumvent the
rulings in the Reorganization Case by gathering evidence on an
issue that has already been decided on the merits. WinNet's
omissions in its ex parte application regarding the decisions
rendered in the Reorganization Case and their impact on other
lawsuits initiated by WinNet reinforce this conclusion.
Further, WinNet brought this § 1782 proceeding one year after
initiating the Reorganization Case and a month after its third
loss in that case. Section 1782 does not require WinNet to
exhaust its remedies in Russia, Mees, 793 F.3d at 303, or to
prove that the information would be admissible there, Brandi-
Dohrn, 673 F.3d at 77, but this delay lends credence to the idea
that WinNet's application is an attempt to circumvent the
decisions already issued by the Russian courts and/or to harass
SG.

    If discovery were permitted, the Court would significantly
narrow WinNet's original requests to reduce the burden on the
respondents.[8] As a result, the fourth factor, which considers

---

[8] WinNet has already undertaken this task. If this application
proceeded, the parties would be given an opportunity to be heard
on whether WinNet has appropriately narrowed its requests.

whether the request is unduly burdensome or intrusive, does not weigh heavily in this analysis.

There remains one final hurdle to WinNet's application. "[I]f a § 1782 application is made in bad faith, . . . the court is free to deny the application in toto." Mees, 793 F.3d at 302 n.18. As officers of the court, attorneys are subject to duties of candor, decorum, and respect for the tribunal before which they appear. Hollingsworth v. Perry, 133 S. Ct. 2652, 2672 (2013). An attorney's duty of candor is so fundamental that a violation of that duty may lead to suspension. In re Gordon, 780 F.3d 156, 161 (2d Cir. 2015). The duty of candor is, if anything, more critical when ex parte applications are made to a court. Both the New York State and Model Rules of Professional Conduct provide that "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." New York Rules of Prof'l Conduct R. 3.3(d) (2017); Model Rules of Prof'l Conduct R. 3.3(d) (2016).

WinNet was not candid when it made its ex parte application to our court's Part I Judge. It did not adequately inform the court of adverse rulings that significantly undermined its application. WinNet explained that it sought the § 1782

25

discovery to pursue its theory in Russian proceedings that there had been an unlawful reorganization scheme to deprive WinNet of the fruits of its leases. WinNet did not forthrightly explain, however, the extent to which Russian courts had repeatedly rejected its attacks on the corporate restructuring of Femida and Femida Real Estate. As described above, it included only cursory references to the relevant litigation in Russia regarding the reorganization, and in those cursory references WinNet did not frankly or fully describe the adverse Russian rulings. A full and fair description of the pertinent litigation may very well have led the court to deny the application. At the very least, it is difficult to draw any conclusion but that WinNet feared that a candid description of the litigation would have undermined if not defeated its application.

WinNet has not shown that any other conclusion would be justified. Despite the fact that WinNet's omissions were emphasized in SG's motion to quash, WinNet has not successfully explained its omissions and mischaracterizations. In a single sentence in its lengthy memorandum in opposition to the motion it relies solely on its Russian lawyer's affidavit, stating "[a]s demonstrated in Aleksandrov Declaration II, WinNet did not misrepresent the Russian Proceedings." The record in this case

says otherwise.

The decision to deny a § 1782 application may not be taken lightly. Section 1782 serves important interests for our nation, international commerce, the rule of law, and international comity. It aims to provide an "efficient means of assistance to participants in international litigation" and to encourage foreign countries "by example to provide similar means of assistance to our courts." KPMG, 798 F.3d at 117 (citation omitted). For the reasons explained here, however, this is one of those unusual cases in which the Court will exercise its discretion to deny the application.

## Conclusion

The respondents' January 30, 2017 motion to quash the subpoenas authorized through a court order of December 21, 2016 is granted. The Clerk of Court shall close the case.

Dated:   New York, New York
         April 13, 2017

_____
                    DENISE COTE
         United States District Judge

27